UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REINA SOBERS,

                    Plaintiff,

v.

ASCENSION PROVIDENCE
HOSPITAL,

                    Defendant.

_____/

Case No. 2:23-cv-12126

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING IN PART MOTION TO DISMISS AMENDED COMPLAINT [8] AND DENYING AS MOOT MOTION TO DISMISS INITIAL COMPLAINT [6]

Plaintiff Reina Sobers sued Defendant Ascension Providence Hospital and alleged discrimination and harassment under the Americans with Disabilities Act (ADA), the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), Title VII of the Civil Rights Act, the Pregnancy Discrimination Act (PDA), and the Michigan Elliott-Larsen Civil Rights Act (ELCRA). ECF 1. Defendant moved to dismiss the complaint. ECF 6. Plaintiff then filed a timely amended complaint. ECF 7; *see* Fed. R. Civ. P. 15. Defendant moved to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF 8. The parties briefed the motion. ECF 9; 10. For the reasons below, the Court will grant in part the motion to dismiss the amended complaint and deny the initial motion to dismiss as moot.[1]

_____

[1] Based on the briefing of the parties, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

## BACKGROUND

Defendant hired Plaintiff to work as a front desk clerk in March 2021. ECF 7, PgID 83. Plaintiff alleged that she informed Defendant at the start of her employment that "she had disabilities including traumatic brain injury, which substantially interfered with major life activities like thinking and communicating, and which caused episodic syncope, migraines, and increased fluid around the brain." *Id.* (alterations omitted). When Plaintiff became pregnant in August 2021, she "requested an accommodation which would allow" her to go to a medical appointment once every three months, but Defendant "denied this accommodation and told her she didn't have enough paid time off to use." ECF 8-3, PgID 174 (alterations omitted). Plaintiff alleged that because of Defendant's denial of her requested accommodation, she "missed crucial doctor's appointments." ECF 7, PgID 84.

Plaintiff also alleged that Defendant, through its supervisors, orally abused Plaintiff because of her request. *Id.* Specifically, Plaintiff alleged that after her medical appointments, she "would be pulled into HR meetings and falsely accused of not meeting the business casual dress code and [told that she] needed to wear sheer shirts." ECF 8-3, PgID 174. Plaintiff further claimed that she "was directed by Defendant to move from seat to seat frequently after she notified Defendant of her pregnancy." ECF 7, PgID 84–85. Such "constant movement," Plaintiff alleged, caused her to experience "dizziness, anxiety, and severe illness." *Id.* at 85.

Plaintiff received treatment "at Michigan Medicine throughout the months of October and November" 2021 and attended those treatment visits "by going without

an excused absence" from work. *Id.* In early December 2021, Plaintiff "experienced vaginal blood spotting" and asked her supervisor for leave to go to the hospital. *Id.* at 85–86. Her supervisor referred Plaintiff to the occupational health department. *Id.* at 86. According to Plaintiff, she "attempted to seek assistance from occupational health department but the parking lot was full and she was unsure what to do because she was still bleeding." *Id.* Plaintiff then went to the hospital. *Id.* Plaintiff claimed that, while she was at the hospital, her supervisor "texted her stating that Plaintiff needed to contact her immediately upon her release from the hospital." *Id.*

Plaintiff had a miscarriage on December 3, 2021. *Id.* She went on maternity leave shortly after. ECF 8-3, PgID 174. While on leave, Plaintiff resigned from her employment with Defendant. ECF 7, PgID 87.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in February 2022, and the EEOC issued a right to sue letter in May 2023. *Id.* In her charge, Plaintiff stated that the alleged discrimination began on March 1, 2021 and ended on October 6, 2021. ECF 8-3, PgID 174. Plaintiff also checked a box that provided the alleged discrimination was a "continuing action." *Id.* And Plaintiff selected sex and disability—not retaliation—as the bases on which she was discriminated against. *Id.* Plaintiff filed the present case soon after, ECF 1, and Defendant moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), ECF 8.

## LEGAL STANDARD

Rule 12(b)(1) provides that a party may move to dismiss a case for "lack of subject-matter jurisdiction." "A motion under Rule 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction must be considered prior to other challenges since proper jurisdiction is a prerequisite to determining the validity of a claim." *Bowles v. Sabree*, No. 20-cv-12838, 2022 WL 141666, at *3 (E.D. Mich. Jan. 14, 2022) (citation omitted). "If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, the [C]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(6), on the other hand, provides that a party may move to dismiss the case for "failure to state a claim upon which relief can be granted." And unlike a 12(b)(1) motion, Defendant "has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). The Court may grant a motion to dismiss under Rule 12(b)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In a Rule 12(b)(6) motion, courts may "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp.

4

3d 424, 427 (E.D. Mich. 2021) (Murphy, J.). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430. But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss the complaint. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

Defendant argued that Plaintiff's federal claims were subject to dismissal under Rules 12(b)(1) and 12(b)(6). ECF 8. The Court will address each claim in turn. But first, the Court will address Defendant's preliminary argument that Counts I, III, and IV should be dismissed because Plaintiff failed to exhaust her administrative remedies under the ADA and Title VII. *See id.* at 120.

I.   Exhaustion

As a preliminary matter, failure to exhaust is a valid basis for dismissal. *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018). But it is not a jurisdictional defect. *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("Title VII's charge-filing instruction is not jurisdictional.") (citation omitted). Rather, exhaustion is a procedural precondition to filing a federal case. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) ("An employee may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the

EEOC because he or she has not exhausted his or her remedies.") (citations omitted); *see also Davis*, 139 S. Ct. at 1850–51 ("Instead, Title VII's charge-filing provisions speak to . . . a party's procedural obligations.") (quotation marks and quotation omitted). The Court will therefore analyze whether Plaintiff exhausted administrative remedies under the Rule 12(b)(6) pleading standard and not under Rule 12(b)(1).

Defendant is correct that Title VII and the ADA require a claimant to "file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." *Parry*, 236 F.3d at 309 (citations omitted). Plaintiff did so when she filed a charge with the EEOC on February 11, 2022, which was within 300 days of October 6, 2021—the date on which the alleged discrimination ended. *See* ECF 8-3, PgID 174.

A.    *Retaliation and Harassment Claims*

Defendant nonetheless argued that the Court should dismiss any claims for retaliation or harassment because Plaintiff did not select retaliation or harassment in her EEOC charge as the bases for her suit. ECF 8, PgID 121 (noting that the EEOC charge has no "reference to any alleged harassment, hostile environment[,] or retaliation" and that "Plaintiff failed to check the retaliation box" in her EEOC charge). Instead, the charge alleged that Defendant "discriminated against [Plaintiff] due to [her] sex and disability" and denied her request for a reasonable accommodation to attend medical appointments. ECF 8-3, PgID 174.

Generally speaking, "[a] charge of discrimination is sufficient if it contains a written statement sufficiently precise to identify the parties[] and to describe generally the action or practices complained of." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (quotation marks and quotation omitted). Yet "[w]hen the EEOC investigation of one charge *in fact* reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred." *Id.* (emphasis in original); *see also Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 471 (6th Cir. 2008) ("Under th[e] 'expected scope of investigation' test, a plaintiff may fully exhaust her administrative remedies on a claim even if the claim was not actually investigated by the EEOC, or specifically stated in the charge."). Similarly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Scott*, 275 F. App'x at 471.

Here, Plaintiff exhausted her administrative remedies as to any retaliation or harassment claims because the facts presented in Plaintiff's EEOC charge would likely prompt the EEOC to investigate whether retaliation or harassment occurred. *See Davis*, 157 F.3d at 464. To be sure, Plaintiff selected only sex and disability—not retaliation—as the bases on which she was discriminated against. ECF 8-3, PgID 174. But she also alleged that "shortly after each hospital visit, she was pulled into HR meetings, falsely accused or not meeting the business casual dress code and told that she needed to wear sheer shirts." *Id.* (alterations omitted). Facts like those, if investigated by the EEOC, could prompt investigation into retaliation or harassment

by Defendant against Plaintiff. *Davis*, 157 F.3d at 464. And unlike in *Scott*, Plaintiff's alleged retaliation claim was based on the same incidents and facts as the sex and disability discrimination claims. *See* 275 F. App'x at 476 (finding failure to exhaust as to retaliation claim because the retaliation claim was based on an incident that occurred four years before the EEOC charge). In sum, because the facts presented in Plaintiff's EEOC charge could prompt the EEOC to investigate whether retaliation or harassment occurred, Plaintiff adequately exhausted her administrative remedies as to any retaliation or harassment claims. The Court will therefore not dismiss Plaintiff's retaliation or harassment claims for failure to exhaust.

      B.    *Conduct After October 6, 2021*

      Defendant also argued that any claims related to conduct that occurred after October 6, 2021 should be dismissed for failure to exhaust because Plaintiff listed October 6, 2021 as the last date of discrimination in her EEOC charge. ECF 8, PgID 123 (claiming that Plaintiff "has not exhausted her remedies as to any alleged discriminatory, retaliatory[,] or harassing acts that purportedly occurred after October 6, 2021"). According to Defendant, the Court must dismiss claims related to Plaintiff's medical leave or miscarriage. *Id.* But Plaintiff did not bring any claims related to her medical leave or miscarriage. *See* ECF 1. Indeed, her allegations only concerned alleged conduct by Defendant and its supervisors *before* her miscarriage and subsequent medical leave. *See id.* Defendant's argument is irrelevant.

II.   <u>ADA (Count I)</u>

The Court will now determine whether the factual allegations in the complaint are sufficient under Rule 12(b)(6) to support Plaintiff's claims for failure to accommodate, discrimination, retaliation, and harassment. Plaintiff alleged in Count I that Defendant violated the ADA by "refusing to provide Plaintiff with reasonable accommodations to allow her to attend her vital doctor's appointments" for her brain injury. ECF 7, PgID 89. Plaintiff thus advanced a claim for failure to accommodate. Plaintiff also appeared to allege two additional claims in Count I: first, that she was "constructively discharged because she could no longer work for Defendant"; and second, that "Defendant retaliated against Plaintiff when she had doctor's appointments or emergency hospital visits by holding a disciplinary HR meeting about her work attire." *Id.* The Court will address all three claims in turn.

A.   *ADA Failure to Accommodate*

The ADA prohibits discrimination "on the basis of disability." 42 U.S.C. § 12112(a). Discrimination under that provision includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee, unless the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A) (alterations omitted). Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, appropriate adjustment or modifications of examinations, and other similar

accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B) (alterations omitted).

The Sixth Circuit uses a multi-factor test to evaluate ADA failure to accommodate claims. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). Plaintiff must (1) show "that she is disabled" and (2) establish "that she is otherwise qualified for the position despite her disability (a) without accommodation from the employer, (b) with an alleged essential job requirement eliminated, or (c) with a proposed reasonable accommodation." *Id.* (citation omitted) (alterations omitted). "Plaintiff[] must also propose a reasonable accommodation to succeed." *Id.* The employer then must prove that the "proposed accommodation will impose an undue hardship upon the employer." *Id.* (citation omitted).

Neither party disputes that Plaintiff was disabled. Plaintiff sufficiently alleged that she was disabled by a severe brain injury and that Defendant knew about the disability. *See* ECF 7, PgID 83–88; ECF 8-3, PgID 174 ("From the time of my interview, I made my employer aware of my disabilities."). Thus, the Court's inquiry whether Plaintiff sufficiently alleged that she was "otherwise qualified for the position despite her disability . . . with a proposed reasonable accommodation." *Kleiber*, 485 F.3d at 869. Viewing the facts in the light most favorable to Plaintiff, the Court finds that she did.

As noted, Plaintiff requested an accommodation in the form of "time to visit the doctor for her disability." ECF 7, PgID 88. Specifically, Plaintiff requested "an accommodation which would allow [her] to go to [her] Doctor appointments every

10

three months for treatment in order to avoid being hospitalized for [her] disability." ECF 8-3, PgID 174. And Plaintiff sufficiently alleged that the proposed accommodation was reasonable. *See* 42 U.S.C. § 12112(b)(5)(A) (requiring employers to make "reasonable accommodations"). Her requested accommodation—namely, time to go to medical appointments every three months—falls within the statutory definition of "reasonable accommodations," which includes "modified work schedules." 42 U.S.C. § 12111(9)(B). What is more, the requested accommodation was a form of medical leave, which "can constitute a reasonable accommodation under the ADA." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017). And it did not create "an unlimited ability to leave work." *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 528 (6th Cir. 2015). Plaintiff requested a reasonable accommodation. *Kleiber*, 485 F.3d at 869.

Plaintiff also alleged that she was qualified for the position despite her disability. *See* ECF 7, PgID 88 (alleging that she "was able to perform all of the essential functions of her job with or without reasonable accommodations"). And Defendant did not dispute that Plaintiff was qualified for the position. *See* ECF 8. In sum, Plaintiff alleged facts sufficient to state a plausible claim for failure to accommodate under the ADA. *Hensley*, 579 F.3d at 609. The Court will therefore deny the motion to dismiss as to the ADA claim.

B.   *Constructive Discharge*

"To demonstrate constructive discharge, a plaintiff must adduce evidence to show that (1) the employer deliberately created intolerable working conditions, as

perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Savage v. Gee*, 665 F.3d 732, 735 (6th Cir. 2012) (cleaned up). Whether the employer created objectively intolerable working conditions can depend on a number of factors, such as "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [male] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (citation omitted).

Plaintiff alleged facts that, taken as true, are sufficient to state a claim for constructive discharge. Plaintiff alleged that she resigned from her employment with Defendant. ECF 7, PgID 87. She also alleged that Defendant "created intolerable working conditions," *Savage*, 665 F.3d at 735, by verbally abusing her, writing disciplinary actions, "threaten[ing] her job," harassing her about her clothing, calling her into HR meetings to discuss her clothing, and making her move seats frequently. *See id.* at 84–87. True, Plaintiff did not explicitly allege that Defendant created those intolerable conditions with the intention of forcing her to quit her job. *See* ECF 7. But Plaintiff did allege facts that, taken in the light most favorable to her, could show that Defendant did so. *See Bassett*, 528 F.3d at 430. Thus, the Court will deny the motion to dismiss as to the constructive discharge claim.

12

C. *Retaliation*

Plaintiff also alleged in Count I that Defendant retaliated against her for requesting an accommodation and attending her medical appointments. *See, e.g.,* ECF 7, PgID 89 ("Defendant retaliated against Plaintiff when she had doctor appointments or emergency hospital visits by holding a disciplinary HR meeting about her work attire."). Plaintiff based the claim on allegations that Defendant pulled her into HR meetings, falsely accused her of not meeting the business casual dress code, and told her that she needed to wear sheer shirts. ECF 8-3, PgID 174.

To prevail on a claim of retaliation, Plaintiff must show that (1) she engaged in protected activity, (2) Defendant knew of the protected activity, (3) Defendant took adverse action against her, and (4) a "causal connection existed between the protected activity and the adverse action." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (citation omitted). "An adverse employment action is an action by the employer that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hicks v. Concorde Career Coll.*, 695 F. Supp. 2d 779, 794 (W.D. Tenn. 2010) (cleaned up).

Plaintiff alleged facts that, if taken as true, are sufficient to "raise a right to relief above the speculative level" for her claim of retaliation. *Hensley*, 579 F.3d at 609 (quotation marks and quotation omitted). First, Plaintiff alleged that she engaged in the protected activity of requesting an accommodation. ECF 7, PgID 88; *see also* 42 U.S.C. § 12112(b)(5)(A) (requiring employers to make reasonable

accommodations to the "known physical or mental limitations of an otherwise qualified" employee). Second, Plaintiff alleged that Defendant knew of her disability. ECF 7, PgID 88. Third, Plaintiff alleged that Defendant took adverse action against her by issuing written disciplinary actions against her and constructively discharging her. *Id.* at 85, 90. Regardless of whether Plaintiff was constructively discharged, the written disciplinary actions fall within the definition of an adverse employment action. Fourth, Plaintiff alleged that a "causal connection existed between the protected activity and the adverse action," *Taylor*, 703 F.3d 336, when she alleged that Defendant retaliated against her because of her accommodation request. ECF 7, PgID 89. In sum, Plaintiff alleged facts that, taken as true, would state a claim for retaliation. The Court will therefore deny the motion to dismiss as to that claim.

III.   Michigan Persons with Disabilities Civil Rights Act (Count II)

Plaintiff alleged that Defendant violated the PWDCRA by discriminating against her because of her disability. ECF 7, PgID 92. Defendant did so, Plaintiff maintained, by refusing to grant her request for a reasonable accommodation and "creating a hostile and offensive work environment." *Id.* Defendant argued that Plaintiff failed to state a claim for violating the PWDCRA because she failed to identify an adverse action by Defendant. ECF 8, PgID 124.

"Under the PWDCRA, employers may not 'discriminate against an individual because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position.'" *Trapp v. Fed. Express Corp.*, 643 F. Supp. 3d 769, 775 (E.D. Mich. 2022) (alterations omitted) (quoting Mich. Comp. Laws

§ 37.1202(1)(b). To maintain her PWDCRA claim, Plaintiff must allege that Defendant "(1) regarded Plaintiff as having a determinable physical or mental characteristic, (2) regarded Plaintiff's perceived characteristic as substantially limiting one or more of her major life activities, and (3) considered Plaintiff's perceived characteristic to be unrelated to her ability to perform the duties of a particular position or to her qualifications for employment or promotion." *Id.* (citation omitted) (alterations omitted).

Here, Plaintiff alleged that Defendant knew about her disability. *See* ECF 7, PgID 84, 88, 94. But Plaintiff failed to allege that Defendant "considered Plaintiff's perceived characteristic to be unrelated to her ability to perform the duties of a particular position or to her qualifications for employment or promotion." *Trapp*, 643 F. Supp. 3d at 775 (citation omitted). Indeed, she alleged the exact opposite. *See* ECF 7, PgID 88 ("Defendant perceived and regarded Plaintiff as a person with disabilities which substantially limited and interfered with her ability to work."). Plaintiff thus failed to allege facts sufficient to raise her PWDCRA claim above the speculative level. *See Hensley*, 579 F.3d at 609. The Court will therefore grant the motion to dismiss as to that claim.

IV.     <u>Pregnancy Discrimination (Count III)</u>

Under Title VII, an employer may not "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C. § 2000e-2(a)(1) (alterations omitted). Discrimination "on the basis of sex" includes

discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *see also Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 669 (1983) ("Title VII was amended in 1978 by the Pregnancy Discrimination Act to prohibit discrimination on the basis of pregnancy."). And while the PDA "does not require employers to make it easier for pregnant employees to work or to treat them specially," it does require them to "treat pregnant employees the same as other employees on the basis of their ability or inability to work." *Payne v. Goodman Mfg. Co., L.P.*, 726 F. Supp. 2d 891, 904 (E.D. Tenn. 2010) (citations omitted).

Plaintiff alleged in Count III of her amended complaint that Defendant discriminated against her because of her pregnancy in violation of Title VII of the Civil Rights Act of 1965 and the Pregnancy Discrimination Act of 1978 (PDA). ECF 7, PgID 95. Specifically, Plaintiff claimed that "Defendant took adverse employment actions against Plaintiff as a result of Plaintiff's sex[] and pregnancy by not allowing her to attend doctor appointments." *Id.* Plaintiff also alleged that Defendant violated Title VII and the PDA by "issuing her written disciplinary actions" and "creating an offensive and hostile work environment by having HR meetings to intimidate Plaintiff," both of which allegedly contributed to or caused her miscarriage. *Id.* at 95–97.

The Court will deny the motion to dismiss as to the pregnancy discrimination claim because Plaintiff pleaded facts that, if taken as true, are sufficient to state a claim for pregnancy discrimination. Bringing a pregnancy discrimination claim

requires Plaintiff to allege that (1) she was pregnant, (2) she was qualified for the job, (3) she was subject to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision. *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996). Here, Plaintiff demonstrated all four elements. First, she alleged that she was pregnant. ECF 7, PgID 95. Second, as noted above, Plaintiff alleged—and Defendant did not dispute—that she was qualified for the job. *Id.* Third, Plaintiff alleged that she was subject to adverse employment actions because of her pregnancy, including written disciplinary actions and holding meetings to intimidate her. *Id.* And fourth, Plaintiff alleged that the adverse employment decision was causally connected to her pregnancy. *Id.* at 95–96. Plaintiff thus alleged facts that, if taken as true, sufficiently state a claim for pregnancy discrimination. The Court will therefore deny the motion to dismiss as to that claim.

V.   <u>Sex Harassment (Count IV)</u>

In Count IV, Plaintiff alleged sex harassment in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act (ELCRA). *Id.* at 98 ("Plaintiff was subjected to repeated and continuous discriminatory treatment based upon her sex by Defendant, to the point where her status as an employee has been detrimentally affected by Defendant.") (alterations omitted). Plaintiff claimed that Defendant created "a hostile and offensive work environment, issuing written disciplinary actions[,] and constructively discharging Plaintiff." *Id.* at 98. And Plaintiff alleged that Defendant's discriminatory actions were "a direct result of Plaintiff's pregnancy

and sex" and were not aimed toward other similarly situated male employees. *Id.* Again, Defendant argued that Plaintiff's claim failed because she failed to show that Defendant took any adverse employment action against her. ECF 8, PgID 124. The Court will first address the Title VII claim. Then, the Court will address the ELCRA claim.

### A. Title VII

Title VII forbids employers from "discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (quotation marks and quotation omitted). "A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Id.* (citations omitted). Such discrimination occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether a workplace environment is hostile or abusive depends on the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Id.* at 23 (alterations omitted).

Plaintiff pleaded facts that, taken as true, are sufficient to state a claim for sex discrimination under Title VII. She alleged that Defendant discriminated against her based on her sex because her "sex was a factor in Defendant's decisions, actions, treatment, conduct, and attitude towards Plaintiff." ECF 7, PgID 97. She also alleged that Defendant created "a hostile and offensive work environment." *Id.* at 98; *see Williams*, 187 F.3d at 560 ("A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment.") (citations omitted). And Plaintiff alleged that Defendant's discriminatory actions were severe enough to "substantially interfere with Plaintiff's employment and[] created an intimidating, hostile, or offensive work environment." ECF 7, PgID 98; *see Harris*, 510 U.S. at 21 (noting that sex discrimination occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"). Taken as true, these allegations are sufficient to state a claim for sex discrimination under Title VII. The Court will therefore deny the motion to dismiss as to that claim.

B.    ELCRA

To maintain a claim under ELCRA, Plaintiff must sufficiently allege that (1) she "belonged to a protected group," (2) she "was subjected to communication or conduct on the basis of sex," (3) she "was subjected to unwelcome sexual conduct or communication," (4) "the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an

intimidating, hostile, or offensive work environment," and (5) "respondeat superior." *Radtke v. Everett*, 442 Mich. 368, 382 (1993) (citations omitted). Plaintiff sufficiently alleged that that she "belong[ed] to a protected class as a woman." ECF 7, PgID 97. Plaintiff also alleged that she was "subjected to communication or conduct on the basis of sex," *Radtke*, 442 Mich. at 382, when she alleged that her "sex was a factor in Defendant's decisions, actions, treatment, conduct, and attitude towards Plaintiff." ECF 7, PgID 97; *see also id.* at 98 ("Plaintiff was subjected to repeat[ed] and continuous discriminatory treatment based upon her pregnancy and sex by Defendant."); *see also id.* ("Defendant took adverse employment actions against Plaintiff . . . due to her pregnancy and sex."). Moreover, Plaintiff sufficiently alleged that "the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment," *Radtke*, 442 Mich. at 382, by alleging that "Defendant created an offensive and hostile work environment against Plaintiff as a direct result of Plaintiff's pregnancy and sex." ECF 7, PgID 98.

But Plaintiff did not allege that she "was subjected to unwelcome sexual conduct or communication." *Radtke*, 442 Mich. at 382. Such conduct includes "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 471 (6th Cir. 2012) (quotation marks and quotation omitted). All of Plaintiff's allegations concern Defendant's allegedly sex-based *employment* actions toward her—namely, the alleged constructive discharge, the alleged hostile work

environment, and the alleged written disciplinary actions. *See* ECF 7, PgID 97–100. But nowhere did she allege that she was subject to unwanted sexual advances, requests for sexual favors, or other hallmarks of unwelcome sexual conduct. *See id.* Unlike other cases in which the employer's agent made overt sexual advances, such as attempting to force the employee to kiss them or engage in other sexual acts with them, *see, e.g., Radtke*, 442 Mich. at 385, Plaintiff alleged only that Defendant discriminated against her by retaliating against her, issuing written disciplinary actions, and constructively discharging her. And "[d]iscriminatory conduct that is gender-based but not sexual in nature does not constitute sexual harassment." *Kalich*, 679 F.3d at 471 (citation omitted). Plaintiff thus failed to allege facts that, taken as true, would satisfy the third prong of the ELCRA claim analysis. The Court will therefore grant the motion to dismiss as to the ELCRA claim.

## CONCLUSION

The Court will grant the motion to dismiss as to the PWDCRA claim and the ELCRA claim. But the Court will deny the motion to dismiss as to the ADA failure to accommodate claim, the constructive discharge claim, the retaliation claim, the pregnancy discrimination claim, and the Title VII sex discrimination claim. Last, the Court will deny the motion to dismiss the initial complaint, ECF 6, as moot.

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss the amended complaint [8] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the motion to dismiss the first complaint

[6] is **DENIED AS MOOT**.

     **SO ORDERED.**

                        <u>s/ Stephen J. Murphy, III</u>
                        STEPHEN J. MURPHY, III
                        United States District Judge

Dated: April 23, 2024